UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Michael R. Medal-Mendoza,**  Civil No. 07-4591 (RHK/SRN)

**Petitioner,**

v.  **REPORT AND RECOMMENDATION**

**The State of Minnesota and Joan
Fabian, Commissioner of Corrections,**

**Respondents.**

---

Michael R. Medal-Mendoza, <u>pro se</u>, Minnesota Correctional Facility, 525th Street, Rush City, Minnesota, 55069

Peter Marker, Esq., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota, 55101, and Mark Lystig, Ramsey County Attorney's Office, 50 West Kellogg Boulevard, Suite 315, St. Paul, Minnesota, 55102, on behalf of Respondents Joan Fabian and the State of Minnesota

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter comes before the undersigned United States Magistrate Judge on Petitioner Michael R. Medal-Mendoza's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), Petitioner's Motion for Immediate Release from Custody or Issuance of Writ (Doc. No. 9), and Petitioner's Motion for Extension of Time to File Reply (Doc. No. 10).  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  For the reasons set forth below, the Court recommends that the petition be denied, the motion for immediate release be denied, and the motion for extension be granted.

I.     PROCEDURAL AND FACTUAL BACKGROUND

On January 12, 2004, the St. Paul Police Department received a 911 call from Andria Crosby, who said she had just been shot. Several officers responded and found Crosby lying on the kitchen floor of the residence. The officers also found two men, Ronald Edward Glasgow and Wayne Louis Costilla, who had also been shot. Glasgow was dead, and Costilla later died at the hospital.

Crosby survived and testified at Petitioner's trial that on the evening of January 11, 2004, she had been with Glasgow and Costilla at a hotel room when Glasgow received a phone call from a person who wanted to buy some methamphetamine. Crosby, Glasgow, and Costilla went to Costilla's apartment to wait for the caller. About 1:30 a.m., the caller, who was later identified as James Green, arrived with two friends, Petitioner and Daniel Valtierra. Costilla gave Petitioner a sample bag of methamphetamine, and Petitioner and his two friends left the apartment. They returned thirty minutes later and kicked down the door. Petitioner, Green, and Valtierra were brandishing guns, and Petitioner said it was a robbery. When Glasgow verbally challenged Petitioner, Petitioner shot him in the head. Crosby screamed and was shot. All three intruders fired several rounds before leaving the apartment. Once Crosby was sure the men were gone, she called 911.

During the subsequent police investigation, Crosby identified Green from a high school yearbook picture. She also identified Daniel Valtierra from a six-person lineup. Police learned from a confidential informant that the three suspects they were looking for were known as J.G., Danny V., and Brooklyn. The informant also gave the police an address where the suspects were staying. The police did not find any of the suspects at that residence, but they spoke with

Green's girlfriend, Alison Kinsel, and Petitioner's brother, who said that Petitioner's alias was Brooklyn. From this information, the police obtained a photograph of Petitioner and prepared a lineup. Crosby immediately identified Petitioner as the shooter.

Kinsel testified at Petitioner's trial that when she woke on the morning of January 12, 2004, Green and Valtierra were at her apartment, along with her friend, Joe Seals. Petitioner also came to the apartment later that day before leaving town with Green and Valtierra. The next day, the three men were involved in an accident in Wisconsin, which led to Petitioner's arrest.

Petitioner's theory at trial was that the real shooter was Seals and that Crosby had misidentified Petitioner as the gunman. This theory was based in part on the premise that Seals, Valtierra, and Green were all members of the same gang, but that Petitioner was not a gang member and thus would not have been involved in a committing a crime with gang members. Petitioner also presented an alibi defense through his friend Rachel Verdaja, who testified that Petitioner was at her house between 4:00 and 5:00 a.m. the morning after the murders.

A jury convicted Petitioner of two counts of first-degree murder and one count of attempted first-degree murder. He was sentenced to two consecutive terms of life imprisonment for the murder convictions and 180 months for the attempted murder conviction. Petitioner appealed to the Minnesota Supreme Court, which affirmed the convictions on August 3, 2006. (Pet. at 3); State v. Medal-Mendoza, 718 N.W.2d 910, 913 (Minn. 2006). Petitioner did not seek a writ of certiorari from the United States Supreme Court or collateral review in the state courts. Instead, he filed the instant petition for habeas relief under § 2254. Petitioner signed the petition on November 8, 2007, and it was docketed five days later on November 13, 2007.

Petitioner raises four grounds for relief in his petition. First, he contends that the trial

court prevented him from presenting a complete defense when it prohibited him from introducing evidence of his co-defendants' gang affiliation. Second, he avers that the trial court erred by permitting a police officer to testify as an expert on the issue of intent. Third, he argues that the trial court improperly instructed the jury that it could consider his flight as proof of his criminal intent. Fourth, he asserts that the trial court erred by allowing a police officer to testify about what she had learned from confidential informants, which Petitioner characterizes as inadmissible hearsay.

## II.   DISCUSSION

### A.   Timeliness

Respondents argue that the petition is untimely. Title 28 U.S.C. § 2244 provides in relevant part that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A).

The Minnesota Supreme Court affirmed Petitioner's conviction in an opinion dated August 3, 2006, but according to the court's docket, judgment was not entered until October 18, 2006, a fact which Respondents overlook. Petitioner had ninety days after the entry of judgment in which to file a petition for certiorari with the United States Supreme Court. See Sup. Ct. R. 13.1. Thus, the deadline for seeking certiorari expired on January 18, 2007. Pursuant to § 2244(d)(1)(A), the period in which to seek federal habeas relief expired one year later, on January 18, 2008. Petitioner filed his habeas petition on November 13, 2007, well within the

one-year limitation period, and the Court finds that the petition is timely.

### B.     Merits of the Petition

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The United States Supreme Court explained the meanings of the "contrary to" and "unreasonable application" clauses in Williams v. Taylor, 529 U.S. 362 (2000). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the

5

state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000); see 28 U.S.C. § 2254(e)(1). This deference applies to factual determinations made by state trial courts and state appellate courts. Sumner v. Mata, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Whitehead v. Dormire, 340 F.3d 532, 539 (8th Cir. 2003).

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d 199, 200-01 (8th Cir. 1995) (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988))). A federal claim has not been fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, O'Sullivan, 526 U.S. at 845, but the petitioner has the right under state law to raise the claim by any available procedure, 28 U.S.C. § 2254(c). A constitutional claim is procedurally

defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). There are two exceptions to the Knaffla rule: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006).

When a claim is procedurally defaulted in state court, the federal habeas court must determine whether the prisoner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice. McCall, 114 F.3d at 758 (citing Coleman, 501 U.S. at 750.). Prejudice need not be considered where a petitioner has failed to fulfill the cause prong of the test. Id. The miscarriage of justice exception is only available to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person. Id. If the exceptions do not apply, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim. See Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

    **1.  Whether the Trial Court Prevented Petitioner from Presenting a Complete Defense**

Petitioner claims that the trial court violated his constitutional right to present a complete defense by prohibiting him from introducing evidence that his co-defendants, Green and

Valtierra, were members of the same gang as Seals. In his appeal to the Minnesota Supreme Court, Petitioner reiterated his trial theory that Crosby had misidentified him as the gunman and that Seals had actually committed the murders. The Minnesota Supreme Court acknowledged that a criminal defendant has the right to present evidence tending to prove that a different person committed the alleged crime. Medal-Mendoza, 718 N.W.2d at 916. However, before a defendant may introduce such evidence, state law requires him to establish that the evidence has "an inherent tendency to connect the alternative perpetrator to the actual commission of the charged crime." Id. (quoting State v. Palubicki, 700 N.W.2d 476, 485 (Minn. 2005)). If the defendant does not lay the proper foundation, the trial court may exclude the evidence. Id. (citing Palubicki, 700 N.W.2d at 485). In Petitioner's trial, the court sustained the prosecution's objection to the gang affiliation evidence because Petitioner did not lay the appropriate foundation for its admission; that is, he did not show that the evidence had the inherent tendency to connect Seals to the crimes. Id. at 916-17. The Minnesota Supreme Court upheld the trial court's ruling. Id. at 917.

"Federal courts are not forums in which to relitigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887 (1983). "The admissibility of evidence in a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief." Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994). The admissibility of evidence is reviewable in a habeas proceeding "only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir. 1984) (per curiam).

The Court finds no due process or other constitutional error in this case. To begin,

neither of the cases cited by Petitioner is on point. In <u>California v. Trombetta</u>, the Supreme Court broadly pronounced that a defendant must be permitted to present a complete defense in order to satisfy due process. 467 U.S. 479, 485 (1984). The precise issue in <u>Trombetta</u> was whether law enforcement agents had to preserve potentially exculpatory evidence for trial, <u>id.</u> at 491, which is not at issue here. In <u>Washington v. Texas</u>, the Court stated that the right to compel the attendance of witnesses and to offer witness testimony at trial was a cornerstone of due process. 388 U.S. 14, 19 (1967). The particular challenge was to a state rule that individuals charged as accomplices could not be called as witnesses for each other. <u>Id.</u> at 15. This situation did not occur in Petitioner's trial. Thus, while the Court agrees with the general due process edicts of <u>Trombetta</u> and <u>Washington</u> cited by Petitioner, neither case has particular applicability to Petitioner's claim.

     Moreover, the Court has independently found no clearly established federal law contrary to the trial court's exclusion of alternative perpetrator evidence or indicating that the trial court's decision involved an unreasonable application of such law. A defendant's right to present evidence is not absolute. <u>See</u> <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.") A defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973). "When due process issues are presented, the court must balance the importance of the evidence against the state interest in exclusion." <u>Perry v. Rushen</u>, 713 F.2d 1447, 1452 (9th Cir. 1983), <u>quoted in</u> <u>Stallings v. Benson</u>, 26 F.3d 817, 819 (8th Cir. 1994). "Where the state interest is

strong, only the exclusion of critical, reliable and highly probative evidence will violate due process." Id., quoted in Stallings, 26 F.3d at 819.

To evaluate the importance of a defendant's evidence, a court should consider "its probative value on the central issue, its reliability, whether it is capable of evaluation by the finder of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense." Id. at 1452-53. In assessing the state's interest, the court "must determine the purpose of the rule, its importance, how well the rule implements this purpose, and how well the purpose applies in the case at hand. The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, in excluding unreliable or prejudicial evidence." Id. at 1453.

The Court begins by evaluating the importance of the evidence to Petitioner's case. Seals' gang affiliation was not probative on the central issue of who committed the murders. The evidence did not definitively, or even circumstantially, identify Seals as the perpetrator. Without the required foundation, the evidence would have shifted suspicion on to Seals due solely to his association with Green and Valtierra. Although Petitioner had apparently intended to call an expert to testify that gang members do not commit crimes with non-gang members, Medal-Mendoza, 718 N.W.2d at 916-17, this evidence was never introduced. As to the reliability of the gang affiliation evidence, Petitioner attempted to elicit this evidence from Green's girlfriend, Kinsel. However, the Court has no basis to measure Kinsel's credibility, and thus considers this factor neutral. Whether the evidence was capable of evaluation by the jury is likewise neutral. Although the evidence is not complex, its lack of relevance to the actual issues in the case could have confused the jury, and it certainly would have been prejudicial to

Petitioner's co-defendants. Regarding cumulativeness, while the evidence would have been the only evidence concerning gang affiliation, it was not the only evidence constituting Petitioner's defense. Petitioner presented an alibi defense at trial through Verdaja, who testified that Petitioner was with her at her house the morning after the crimes were committed. Petitioner does not allege that any error was committed in the presentation of this alibi defense, and even though the jury ultimately rejected the alibi, that defense was clearly stronger than the gang affiliation argument.

Turning to the state's interests, the Court must consider the purpose and importance of the evidentiary rule, how well the rule achieves its purpose, and how the purpose relates to the instant case. The State of Minnesota permits alternative perpetrator evidence only after a defendant establishes a foundation showing that the evidence has an intrinsic tendency to connect the uncharged party with the crime. Palubicki, 700 N.W.2d at 485. This requirement "avoids the use of bare suspicion and safeguards the third person from indiscriminate use of past differences." State v. Richardson, 670 N.W.2d 267, 280 (Minn. 2003) (quoting State v. Hawkins, 260 N.W.2d 150, 159 (Minn. 1977)). The function of the rule is to preclude irrelevant and prejudicial information, which is a fundamental tenet of evidentiary rules. The rule is well-suited to achieve its purpose, providing a sound test to ensure that the alternative perpetrator evidence is relevant to the offense charged and the issue of the defendant's guilt. At Petitioner's trial, the court excluded the proffered evidence because Petitioner failed to show that the gang affiliation evidence had the inherent tendency to connect Seals to the crimes. If Petitioner had properly offered foundational evidence, there is no reason to believe that the alternative perpetrator evidence would not have been admitted. Without the required foundation giving the

jury some valid basis to connect Seals to the crimes, however, there was a real danger that the jury would have suspected Seals of committing the crimes merely because he was in a gang with Green and Valtierra. Thus, the foundation requirement achieved its purpose to safeguard a third party from the indiscriminate use of his past conduct.

In assessing the respective interests in this case, the Court has also considered the state's substantial interest in orderly trials, judicial efficiency, and excluding unreliable or prejudicial evidence. On balance, the state's interests clearly outweigh Petitioner's, and the Court finds that Petitioner's right to due process was not violated by the trial court's exclusion of gang affiliation evidence absent proper foundation.

### 2. Whether the Trial Court Erred by Permitting a Police Officer to Testify as an Expert

Petitioner next asserts that the trial court erred when it allowed a police officer to testify as an expert. During the trial, St. Paul Police Sergeant Janet Dunnom testified as an expert, over Petitioner's relevancy objection, about the theory of triangulation, which occurs when a drug buyer brings additional people to a drug transaction. Medal-Mendoza, 718 N.W.2d at 917. Sergeant Dunnom testified that triangulation signals danger "because that can mean either robbery, at best, or a murder, at worst." Id. Sergeant Dunnom did not testify that triangulation occurred in Petitioner's situation. In addressing this claim, the Minnesota Supreme Court concluded that the trial court erred by permitting the testimony because triangulation did not occur in Petitioner's situation. Id. Nevertheless, the court found the error harmless because the jury based its verdict on Crosby's identification of Petitioner as the shooter, not the triangulation testimony. Id. at 918.

In his brief to the Minnesota Supreme Court, Petitioner referred to only one Supreme Court case, Sullivan v. Louisiana, 508 U.S. 275, 279 (1993), for the proposition that a "court must examine the basis on which a jury rested its verdict and may find the error harmless only if the verdict was 'surely attainable' to the error." (Appellant Br. at 30.) Petitioner cited no federal authority for this claim in his habeas petition and only the Sullivan case and a Second Circuit case, United States v. Grinage, 390 F.3d 746, 751 (2d Cir. 2004), in his supporting memorandum. Thus, the Court limits habeas review of this claim to Sullivan.[1]

Sullivan instructed reviewing courts to consider what effect the constitutional error had on the verdict in the case at hand. 508 U.S. at 279. Putting aside for the moment the question of whether the alleged error in this case was of constitutional magnitude, the Court will look "to the basis on which 'the jury actually rested its verdict.'" Id. (quoting Yates v. Evatt, 500 U.S. 391, 404 (1991)). The question is whether the verdict "was surely unattributable to the error." Id. This Court agrees with the Minnesota Supreme Court that the jury's verdict in this case was based on Crosby's identification of Petitioner as the shooter. Moreover, because Petitioner and his co-defendants did not engage in triangulation, the testimony on that subject was of no use to the jury. Consequently, the verdict was entirely unattributable to the error.

As to whether the evidentiary error implicated any constitutional rights, it is well-established that "federal courts may intervene in the state judicial process only to correct wrongs

---

[1] Grinage is distinguishable from the case at hand. In Grinage, a law enforcement agent summarized recorded telephone calls for the jury and pointed out important details tending to prove the existence of a conspiracy. 390 F.3d at 750. The court found the testimony unduly prejudicial because it essentially usurped the jury's duty to weigh the evidence and draw appropriate inferences. Id. at 750-51. By contrast, here, Sergeant Dunnom did not summarize any evidence, and she did not testify that triangulation actually occurred. Thus, the jury was free to weigh the evidence and determine whether or not triangulation was present.

of a constitutional dimension." Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam).  A habeas petitioner must therefore show that the admission of evidence in a state trial "was so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived him of fundamental fairness." Manning-El, 738 F.2d at 323.  Petitioner has not made this showing here.  The jury had other, strong evidence on which it based the verdict.  It is highly unlikely that the jury even considered the triangulation evidence given that triangulation did not occur.  The triangulation evidence did not relate to the essential issues of the case, such as directly implicating Petitioner in the shootings, and thus, the substance of the evidence was not conspicuously prejudicial.

In sum, the Court finds that the state court decisions were not contrary to or an unreasonable application of Supreme Court precedent, and habeas relief should be denied on this claim.

### 3. Whether the Trial Court Improperly Instructed the Jury That It Could Consider Petitioner's Flight as Proof of Criminal Intent

Petitioner next contends that the trial court erred in giving a permissive inference instruction to the jury that it could consider evidence of Petitioner's flight from Minnesota as proof of his criminal intent.  St. Paul Police Sergeant Jane Laurence testified at trial that a confidential informant had told the police that Petitioner, Valtierra, and Green drove to Chicago after committing the crimes, but were returning to St. Paul when they were involved in an accident in Wisconsin.  Based on this information, Petitioner was arrested in Wisconsin.  At the end of trial the court gave the jury the following permissive inference instruction over Petitioner's objection:

> It is for you alone to decide whether or not the defendant fled after the alleged crimes. If you determine that he did flee, then you may take such flight into consideration as an inference of guilty intention at the time of the incident, giving rise to these charges.
>
> Flight in itself is not conclusive evidence of a guilty intent; but if you find such flight existed, then you may consider it, along with all of the other pertinent evidence in this case in determining whether or not the State has established that the defendant possessed the requisite intent at the time and place of the alleged crimes.

Medal-Mendoza, 718 N.W.2d at 918.

The Minnesota Supreme Court found that the trial court erred in giving this instruction. Id. at 918-19. The court further found, however, that the error did not significantly impact the verdict because the state's case against Petitioner was so strong, given Crosby's identification of Petitioner as the gunman. Id. at 919.

The question for the Court on federal habeas review is whether the jury instruction, standing alone, "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991). Petitioner relies on Court of Ulster County v. Allen, 442 U.S. 140, 156 (1979), in support of his claim. Under Allen, the test for whether a jury instruction deprived a defendant of a fair trial is whether it undermined the jury's responsibility to determine the facts beyond a reasonable doubt. See id.

Here, the state's case against Petitioner was solid. The critical evidence was Crosby's identification of Petitioner as the gunman, not the fact that he fled the state after the crime. There is no reason to believe that evidence of Petitioner's flight tainted the identification evidence in any way. In addition, any harm from the instruction was mitigated by the additional fact that Petitioner was in the process of returning to Minnesota when he was apprehended. Consequently, the Court finds that the flight instruction did not undermine the jury's role, and

thus, did not violate Petitioner's right to due process.

### 4. Whether the Trial Court Erred by Allowing a Police Officer to Testify About Conversations with the Confidential Informant

Petitioner asserts that the trial court erred by allowing Sergeant Laurence to testify about the conversations she had with a confidential informant, which he characterizes as inadmissible hearsay under Federal Rule of Evidence 801. Petitioner did not raise this particular claim on direct appeal, and thus, he failed to fairly present this claim to the state courts. The claim is not unexhausted because Petitioner has no right under state law to raise the claim now. Rather, the claim is procedurally defaulted. At the time Petitioner directly appealed, he knew about the facts underlying the hearsay claim but failed to raise it. Thus, under Knaffla, Petitioner would be barred from raising the issue in state court at this time. Neither Knaffla exception applies—the claim is not novel, and fairness does not require review. This Court may not adjudicate the procedurally defaulted claim on habeas review because Petitioner has shown neither cause and prejudice for the default nor that a fundamental miscarriage of justice would result if the Court does not consider the claim.

Petitioner did present a somewhat-related argument to the Minnesota Supreme Court that the introduction of evidence obtained from the confidential informant precluded him from confronting his accuser. However, Petitioner did not raise this particular claim in his habeas petition. Nevertheless, out of an abundance of caution, given the Court's duty to construe pro se pleadings liberally, the Court will briefly address this issue.

Noting that Petitioner failed to object to this evidence at trial, the Minnesota Supreme Court found that the trial court did not err by failing to sua sponte exclude Sergeant Laurence's

testimony regarding information she received from a confidential informant. Medal-Mendoza, 718 N.W.2d at 919. The court noted that the informant was a mere transmitter of information, not an active participant in the crime. Id. Furthermore, the testimony was not material to Petitioner's guilt. The informant's statement was introduced to show how the investigation had proceeded and how Petitioner had been identified as a suspect. Id.

The Court agrees that withholding the informant's identity did not violate Petitioner's right to confront his accuser. In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court held that the government has a privilege to withhold from disclosure the identity of confidential informants in certain situations. The decision whether to require disclosure "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. Where disclosure "is relevant and helpful to the defense or an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. Here, Petitioner does not explain how disclosure of the informant's identity would have provided him with relevant or helpful information. The informant was a mere tipster, not an active participant in the crime. Sergeant Laurence's testimony regarding the informant did not establish Petitioner's guilt but revealed how police identified Petitioner as a suspect. Accordingly, the public's interest in protecting the confidential information outweighed Petitioner's interests, and the trial court's admission of the evidence was neither contrary to established Supreme Court law nor an unreasonable application of such precedent.

### C. Petitioner's Motions

Petitioner's motion for immediate release from custody is a request to either grant the petition or release him from custody. Because Petitioner is not entitled to habeas relief, the

motion should be denied.  Petitioner's motion for an extension of time to file a reply seeks an extension until March 15, 2008, to file his reply.  Petitioner filed a reply on March 13, 2008, and the Court has considered it in addressing the petition.  Accordingly, the motion should be granted.

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**;

2. Petitioner's Motion for Immediate Release from Custody or Issuance of Writ (Doc. No. 9) be **DENIED**; and

3. Petitioner's Motion for Extension of Time to File Reply (Doc. No. 10) be **GRANTED**.

Dated: May 16, 2008

        s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by  **June 2, 2008**  , a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.